SAMUEL KORNHAUSER, Esq., California Bar No. 083528
LAW OFFICES OF SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, California 94111
Telephone:   (415) 981-6281
Facsimile:   (415) 981-7616

Attorney for Defendant

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MMA CAPITAL LLC,<br><br>Plaintiff,<br><br>v.<br><br>DYNAMIC LEISURE CORPORATION,<br><br>Defendant. | Case No. C 08-0482 MHP<br><br>DEFENDANT DYNAMIC LEISURE CORPORATION'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER OR ORDER TO SHOW CAUSE REGARDING PRELIMINARY INJUNCTION<br><br>DATE:   February 4, 2008<br><br>TIME:    2:00 PM |

Opp to TRO

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 3

ARGUMENT ............................................................................................................................. 5

    I.    MMA'S OWN SETTLEMENT AGREEMENT PRECLUDED ITS MOTION FOR TRO ................................................................................................ 5

    II.   IN ADDITION TO BEING ESTOPPED FROM SEEKING A TRO, MMA HAS NOT SATISFIED THE REQUIREMENTS FOR OBTAINING AN INJUNCTION ........................................................................... 6

        A.    A Temporary Restraining Order Is Moot ................................................ 6

        B.    A Temporary Restraining Order Would Disrupt The Status Quo .......... 6

        C.    The Balance Of Harm Tips Strongly Toward DLC ............................... 7

        D.    The Remedies At Law Are Adequate For Any Alleged Breach By DLC ........................................................................................................ 8

        E.    MMA Has Not Demonstrated A Probability Of Success ....................... 8

    III.  SECURITY BOND .................................................................................................. 9

CONCLUSION ........................................................................................................................ 10

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

# TABLE OF AUTHORITIES

**Cases**

A&M Records, Inc. v. Napster, Inc. 239 F.3d 1004, 1015 n. 3 (9th Cir. 2001).......................... 9

Chicago United Industries, Ltd. v. City of Chicago 445 F.3d 940 (7th Cir. 2006) .................... 6

Combined Metals Reduction Company v. Gemmill 557 F.2d 179 ............................................ 6

Dan Caputo Co. v. Russian River County Sanitation District 557 F.2d 179 ............................ 6

eBay Inc. v. MercExchange, L.L.C. 547 U.S. 388, 126 S.Ct. 1837 (2006) ............................... 1

Goldie's Bookstore, Inc. v. Superior Court 739 F.2d 466 (9th Cir. 1984)................................. 7

Great-West Life & Annuity Insurance Co. v. Knudson (2002) 534 U.S. 204 ........................... 2

Horwitz v. Southwest Forest Industries, Inc. 604 F. Supp. 1130 (D. Nev. 1985)...................... 9

Los Angeles Memorial Coliseum Commission v. National Football League 634 F.2d 1197 (9th Cir. 1980)........................................................................................................ 8

National Steel Car, Ltd. v. Canadian Pacific Ry., Ltd. 357 F.3d 1319 (Fed. Cir. 2004) ............................................................................................................................................ 9

Sanborn Manufacturing Co. v. Campell Hausfeld/Scott Fetzer Co. 997 F.2d 484 (8th Cir. 1993).................................................................................................................... 9

Simula, Inc. v. Autoliv, Inc. 175 F.3d 716 (9th Cir. 1999) ........................................................ 8

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

## INTRODUCTION

Plaintiff MMA Capital LLC's ("MMA") motion for temporary restraining order to restrain Defendant Dynamic Leisure Corporation ("DLC") from "pledging, disposing of or destroying any of the assets that it has pledged as security to MMA" should be denied for the following reasons:

1. MMA has already agreed, pursuant to an executed Settlement Agreement with DLC, to allow DLC to do the very thing MMA is now seeking to enjoin, i.e., MMA has agreed to allow DLC to pledge MMA's "collateral" without approval from MMA. (Exhibit 1, §5.)[1]

2. MMA's request for TRO is moot since DLC has already pledged the "collateral" to Trafalgar Capital Specialized Investment Fund ("Trafalgar") for needed financing, which financing has already been funded and has and is being used to meet the critical needs of DLC's operations.

3. MMA has not satisfied the four part test for the grant of injunctive relief:

    a) MMA has not shown it will suffer irreparable damage;

    b) MMA has not shown that remedies at law, such as damage, are inadequate;

    c) MMA has not shown that that balance of hardship between itself and DLC warrants a remedy in equity, and

    d) that the public interest would not be disserved by an injunction.

eBay Inc. v. MercExchange, L.L.C. 547 U.S. 388, 126 S.Ct. 1837, 1839 (2006).

MMA will not suffer irreparable damage if DLC pledges the collateral to Trafalgar. To the contrary, DLC's pledge of the collateral has already occurred and was <u>pre-agreed</u> to by MMA. The pledge has resulted in Trafalgar loaning DLC an additional $1.2 million (in addition to the $2.5 million it had previously loaned DLC), a substantial part of which allows DLC to continue to operate, thereby <u>increasing</u> MMA's security. Without Trafalgar's additional financing, DLC's operations and existence would have been seriously jeopardized, thereby jeopardizing MMA's security.

---

[1] Exhibits referred to herein are to the exhibits attached to Daniel Brandano's January 29, 2008 Declaration filed in this case.

Likewise, MMA has not shown that damages are an inadequate remedy. To the contrary, its whole Complaint herein seeks damages. In fact, MMA has not shown any default which would even give rise to its Complaint herein, let alone the drastic remedy of an injunction which would prevent DLC from operating.

The balance of hardship tips strongly toward DLC. If a TRO were not moot and if one were granted, DLC would somehow have to return $1.2 million (which it has and is using to pay operating expenses and debts) to Trafalgar, which would seriously jeopardize DLC's operations and existence and force DLC to layoff or terminate employees and be subjected to claims by Trafalgar and DLC vendors.

MMA, on the other hand, has little hardship. It agreed to "facilitate," and in fact demanded, as part of its Settlement Agreement with DLC, that DLC "strive to secure new investment." MMA further agreed to allow DLC to grant any new investor a security interest in the collateral "superior" to that of MMA. Thus, MMA can hardly claim "hardship" in DLC doing exactly what MMA demanded and which has had the effect of strengthening MMA's security position.

Moreover, there is no need for an injunction. MMA's loan is not in default. MMA's loan comes due in 33 days. It appears that MMA is attempting to prevent DLC from satisfying MMA's loan by preventing DLC from obtaining financing to operate so DLC can acquire additional funds or financing or equity from Trafalgar or others to pay off MMA.

DLC believes that the real reason for MMA filing this lawsuit is that MMA wants to force DLC into a default so that MMA can foreclose on DLC and take over its business for a fraction of its value. MMA does not want its loan repaid. It wants to steal DLC's business. It should not be allowed to use this Court to do so. In 33 days the MMA loan will come due. That would be the time, not now, for MMA to file suit and seek an injunction if there is, in fact, a default. A TRO should not be issued on a speculative default. Great-West Life & Annuity Insurance Co. v. Knudson (2002) 534 U.S. 204, 210 [no injunction to compel payment of past due money obligation].

In addition, the public interest would not be served by granting a TRO. A TRO could result in DLC being put out of business, its employees out of work and a multiplicity of lawsuits by Trafalgar and other creditors and vendors against DLC and MMA.

## STATEMENT OF FACTS

DLC is in the business of providing on-line, full service, complete travel packages to its customers. It has invested in and developed proprietary software worth millions of dollars to allow it to operate its business.

On January 13, 2006, DLC borrowed $2 million from MMA in the form of a secured convertible promissory note. MMA's loan was secured by the assets of DLC's business. (DB Dec., ¶5.)[2]

On November 2, 2006, MMA sent DLC a notice of default, claiming that DLC had defaulted. MMA followed on November 22, 2006 by filing a lawsuit against DLC claiming a breach of the promissory note. (DB Dec., ¶6.)

On March 5, 207, MMA and DLC settled that lawsuit and entered into a settlement agreement. As part of that settlement agreement, MMA demanded that DLC "strive to secure new investment" in DLC "in an amount sufficient to fund [DLC's] business plan." MMA agreed, as part of that March 2007 settlement, to allow DLC to secure additional investment with the same collateral (DLC's business assets) which secured MMA's loan and to allow the other investor to obtain a security interest in the collateral "superior" to MMA's if the "gross proceeds in any form whatsoever [is] more than Three Million Dollars…" (Exhibit 1, §5.) Section 5 of that Settlement Agreement provides in pertinent part:

> The Company [DLC] shall strive to secure new investments in securities of [DLC] in an amount sufficient to fund [DLC's] business plan… the parties agree to modify § 6 of the Security Agreement to provide that [DLC] may grant a security interest in the Collateral to one or more investors… without MMA's approval provided that the security interest demanded by the investors and the security interest granted by [DLC] in the Collateral is… superior to the rights granted to MMA by the Security Agreement

---

[2] "DB Dec." refers to Daniel Brandano's January 29, 2008 Declaration filed in this action.

Opp to TRO                                      - 3 -

and the potential investors are purchasers of securities of [DLC] for gross proceeds in any form whatsoever of more than Three Million Dollars ($3,000,000 US).

On June 29, 207, Trafalgar invested $2.4 million in DLC. (Exhibit 2.)

In December 2007, DLC needed additional capital, after its initial capital investment in its proprietary operating system, to operate its business. DLC first approached MMA for additional financing, but MMA was only willing to loan $250,000 and demanded that, as a condition to such additional funding, that MMA take control of DLC by putting two MMA loyalists on DLC's Board of Directors and that Mr. Brandano be removed as President of DLC and replaced by James Sletteland, a person chosen by MMA to operate DLC. (Exhibit C to Gary Armitage's January 22, 2008 Declaration filed in this action.)[3] The $250,000 proposed financing would be due in three months. Thus, MMA's $2.25 million loan (MMA had increased the $2 million to $2.25 million and raised the interest rate from 8% to 10% as part of the settlement) would still be due March 5, 2008 and the proposed new $250,000 loan would mature April 10, 2008.

The $250,000 was not enough to meet DLC's needs and the conditions imposed were not acceptable to DLC. In particular, DLC recognized that MMA's demand to control DLC's Board of Directors and replace its President would put MMA in a position where MMA totally controlled DLC so that MMA could purposely default on its own loan, thereby allowing MMA to foreclose on all of DLC's business assets and thereby acquire DLC's business, including its proprietary information and technology, for a fraction of its true value. DLC recognized this ploy and therefore approached Trafalgar for additional investment after explaining MMA's plan. DLC notified MMA of its negotiations with Trafalgar.

On January 22, 2008, Trafalgar agreed to provide additional investment as bridge financing and to assist in obtaining additional long term investment.

On January 25, 2008, Trafalgar invested $1.2 million in DLC and is in the process of assisting in seeking additional investors. Pursuant to Section 5 of the Settlement Agreement

---

[3] Mr. Armitage's Declaration is referred to herein as "Armitage Dec."

Opp to TRO                                         - 4 -

with MMA, DLC provided Trafalgar with a security interest in its (DLC's) business assets to secure Trafalgar's loan.[4]

MMA has filed this lawsuit and is seeking this TRO in an attempt to prevent DLC from thwarting MMA's takeover of DLC. There is no default in the MMA loan.

## ARGUMENT

### I. MMA'S OWN SETTLEMENT AGREEMENT PRECLUDED ITS MOTION FOR TRO

MMA's lawsuit and its motion for TRO should be seen for what they really are – another attempt by MMA to steal DLC after its December 2007 ploy to steal DLC was thwarted by Trafalgar's loan. MMA has filed this action and is seeking a TRO, not because of any default or because its collateral is "threatened" by the Trafalgar financing, but rather because MMA wants to force DLC into default so that it can acquire DLC for a fraction of its true value.

Significantly, MMA did not notify DLC that DLC was allegedly in default (by "generally not paying its debts as they come due") until January 23, 2008, i.e., <u>after</u> DLC rejected MMA's takeover attempt and informed MMA that it was obtaining additional financing from Trafalgar.

MMA knows that it is bound by Section 5 of its Settlement Agreement with DLC to allow DLC to provide a "superior" security interest in the collateral to any investor who invests more than $3 million in DLC. MMA also knows that Trafalgar's recent additional investment puts Trafalgar's investment (after the Settlement Agreement) at $3.5 million, which allows Trafalgar to obtain a superior lien in the collateral to that of MMA – as MMA agreed to and, in fact, encouraged. However, when DLC exercised its rights under the Settlement Agreement, MMA attempted to breach that Settlement Agreement by filing this action and seeking this TRO without merit.

---

[4] The second to last draft of the January 22, 2008 Agreement was inadvertently attached to Mr. Brandano's January 29, 2008 Declaration rather than the final Agreement whereby Trafalgar agreed to provide $1.2 million in additional investment.

II. IN ADDITION TO BEING ESTOPPED FROM SEEKING A TRO, MMA HAS NOT SATISFIED THE REQUIREMENTS FOR OBTAINING AN INJUNCTION

MMA's motion for a TRO should be denied for any of the reasons set forth in the introduction above.

### A. A Temporary Restraining Order Is Moot

First, the Trafalgar financing has already taken place. Trafalgar has invested $1.2 million additional monies (for a total of $3.5 million), so a TRO is moot. Dan Caputo Co. v. Russian River County Sanitation District 557 F.2d 179, 192; Combined Metals Reduction Company v. Gemmill 557 F.2d 179. The money has been transferred and has been and is being spent by DLC to operate its business. A TRO will not issue to undo an event that has already occurred. Dan Caputo, supra; Combined Metals, supra.

### B. A Temporary Restraining Order Would Disrupt The Status Quo

A TRO or preliminary injunction is properly sought only to avert irreparable harm. Chicago United Industries, Ltd. v. City of Chicago 445 F.3d 940, 944 (7th Cir. 2006):

> Preliminary relief is properly sought only to avert irreparable harm to the moving party. [CITATIONS] Whether and in what sense the grant of relief would change or preserve some previous state of affairs is neither here nor there. To worry these questions is merely to fuzz up the legal standard.

In the present case, a TRO would not avoid irreparable harm (if there is none, as discussed infra) since the Trafalgar loan has already been funded and Trafalgar has received a superior security interest in the collateral as pre-agreed to by MMA. Trafalgar has a significantly greater investment in DLC ($3.5 million) than MMA ($2.25 million). MMA cannot complain that its collateral has been impaired by DLC doing exactly what MMA insisted it do – obtain additional financing secured by a superior lien. (Exhibit 1, §5.) That is exactly what Trafalgar did. MMA agreed in advance to that superior lien and DLC and Trafalgar relied on MMA's agreement. MMA is now trying to breach its Settlement Agreement by filing this lawsuit and seeking this TRO.

In fact, allowing a TRO and undoing the Trafalgar loan would destroy the status quo. It would (if it could) undue the Trafalgar loan, force DLC to pay back money it has spent to operate which it does not have. It would trigger lawsuits by Trafalgar and vendors as well as a breach of contract and bad faith lawsuit by DLC against MMA.[5]

C. The Balance Of Harm Tips Strongly Toward DLC

As set forth above, the TRO which MMA is seeking (to prevent DLC from pledging collateral) in effect seeks to freeze, prejudgment, DLC's assets and prevent it from obtaining additional financing. Not only is that a breach of MMA's agreement under the Settlement Agreement, it would destroy DLC's business by preventing DLC from obtaining operating capital. It would allow MMA to effect its takeover plan and acquire DLC for a fraction of its value. It would reward MMA for its own bad faith and wrongdoing. It would result in DLC employees losing their jobs, and numerous lawsuits.

On the other side, denying the TRO would not impose any significant hardship on MMA. Its loan matures in 33 days, on March 5, 2008. There has been no valid default asserted by MMA. The "failure to pay debts as they become due" is a bogus pretext, thought up by MMA after its attempt to take over DLC was thwarted by Trafalgar's loan. Thus, there is no present basis for MMA's lawsuit on this motion for a TRO. To obtain a TRO, there must be existing harm, not speculative harm. Goldie's Bookstore, Inc. v. Superior Court 739 F.2d 466, 472 (9th Cir. 1984). MMA has not and cannot meet that requirement.

Nor can MMA argue that the Trafalgar loan and security interest harms it. Just the opposite. MMA agreed to and demanded that DLC obtain new investors and agreed to allow this superior lien. It cannot now claim to be harmed by DLC doing what MMA demanded. Nor has MMA been harmed. Trafalgar already had a pari passu security interest shared with Trafalgar before this recent financing. Trafalgar's additional financing adds to DLC's financial

---

[5] If there is a dispute, it is between MMA and Trafalgar to establish who between them has the priority in liens. That is not a subject for this Court to peremptorily decide, as MMA is requesting this Court to do with this TRO, especially since Trafalgar is not a party and is not before this Court to protect itself.

Opp to TRO                                                    - 7 -

position by allowing it to operate and obtain additional investment to better be able to pay off the MMA loan when it becomes due, all of which enhances MMA's security position.

In short, there is substantial harm to DLC and no "harm" (which MMA has not already agreed to) to MMA by the Trafalgar financing.

### D. The Remedies At Law Are Adequate For Any Alleged Breach By DLC

A preliminary injunction will ordinarily not be granted if the plaintiff has an adequate remedy at law – damages. Los Angeles Memorial Coliseum Commission v. National Football League 634 F.2d 1197, 1202 (9th Cir. 1980) [injunction denied because lost revenue and diminution in property value can be remedied by damages]. In the present case, MMA has filed this Complaint for breach of contract, seeking damages. If it has a case and can prove it (there has been no breach since the loan is not due until March 5, 2008 and there has been no default), MMA can recover damages or exercise its option and convert the loan to shares of DLC stock, which is all that MMA is entitled to. It has a legal remedy and does not need to invoke this Court's equity jurisdiction.

### E. MMA Has Not Demonstrated A Probability Of Success

Where, as here, the plaintiff has not demonstrated a significant threat of harm, the need to establish a probability of success becomes irrelevant. Simula, Inc. v. Autoliv, Inc. 175 F.3d 716, 725 (9th Cir. 1999) [preliminary injunction can only be granted when moving party has demonstrated a significant threat of irreparable injury even if the amount of the alleged injury is sizeable].

Here, MMA has not demonstrated (nor can it) that DLC has breached its contract by obtaining additional financing. There has been no breach of contract. DLC did exactly what it was allowed to do under Section 5 of the Settlement Agreement. MMA has filed this action for breach of contract because DLC has allegedly "fail[ed] generally to meet its debts as they come due." (Complaint, ¶23.) DLC denies that there has been a breach of the contract. In fact, DLC

obtained additional financing from Trafalgar to avoid a breach, i.e., to generally meet its debts as they come due.

It is MMA that is attempting to breach the contract by attempting to prevent DLC from generally meeting its debts by attempting to prevent DLC from obtaining additional funding. MMA's breach and bad faith defeat any probability of MMA prevailing on the merits. MMA has not and cannot meet its substantial burden of defeating DLC's affirmative defenses and therefore a TRO should not be granted. A&M Records, Inc. v. Napster, Inc. 239 F.3d 1004, 1015 n. 3 (9th Cir. 2001); National Steel Car, Ltd. v. Canadian Pacific Ry., Ltd. 357 F.3d 1319, 1325 (Fed. Cir. 2004).

Moreover, a preliminary injunction will ordinarily be denied where granting it would effectively end the case by giving the moving party substantially the relief it seeks after trial on the merits. Sanborn Manufacturing Co. v. Campell Hausfeld/Scott Fetzer Co. 997 F.2d 484, 486 (8th Cir. 1993).

In addition, injunctive relief may be denied where to do so would adversely affect the rights of third parties. Horwitz v. Southwest Forest Industries, Inc. 604 F. Supp. 1130, 1136 (D. Nev. 1985). Here, Trafalgar's rights would be adversely affected by a TRO.

III.   SECURITY BOND

For the reasons set forth above, the motion for TRO should be denied. However, if the Court were to issue a TRO (it should not), MMA should be ordered to post a $10 million bond to protect DLC as the minimum amount necessary to reimburse it for the lost value of its business and assets which would be caused by a TRO.[6]

---

[6] The value of DLC's proprietary intellectual property has not been appraised, but Trafalgar has informed Daniel Brandano of DLC that Trafalgar believes it to be worth tens of millions of dollars and that is why Trafalgar feels secure in investing $3.6 million to date, and possibly more. (Declaration of Robert Press.) Indeed, MMA must feel the same since it attempted to join with Trafalgar to invest additional money in DLC.

Opp to TRO                                                  - 9 -

# CONCLUSION

For the reasons set forth above, MMA's Motion for TRO/Preliminary Injunction should be denied.

RESPECTFULLY SUBMITTED

DATED: January 31, 2008                LAW OFFICES OF SAMUEL KORNHAUSER,

By: /s/ Samuel Kornhauser
Samuel Kornhauser
Attorney for Defendant

# PROOF OF SERVICE

I declare that I am employed in the City and County of San Francisco. I am over the age of eighteen years and not a party to the within cause. My business address is 155 Jackson Street, Suite 1807, San Francisco, CA. On January 31, 2008, I served the within **DEFENDANT DYNAMIC LEISURE CORPORATION'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER OR ORDER TO SHOW CAUSE REGARDING PRELIMINARY INJUNCTION** on the party below in said cause:

> Michael R. Matthias, Esq.
> John J. Leonard, Esq.
> Baker & Hostetler LLP
> 12100 Wilshire Boulevard, 15th Floor
> Los Angeles, CA 90025-7120

via facsimile and UPS Next Day Air.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on January 31, 2008, at San Francisco, CA.

_____
Donald E. Stevens