SAMUEL KORNHAUSER, Esq., California Bar No. 083528
LAW OFFICES OF SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, California 94111
Telephone:   (415) 981-6281
Facsimile:    (415) 981-7616

Attorney for Counterclaimant

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DYNAMIC LEISURE CORPORATION,<br><br>　　　　Counterclaimant,<br><br>v.<br><br>MMA CAPITAL LLC,<br><br>　　　　Counterclaim Defendant. | Case No. C 08-0482 MHP<br><br>COUNTERCLAIM FOR DAMAGES FOR BREACH OF CONTRACT, BAD FAITH, INTERFERENCE WITH CONTRACT, INTERFERENCE WITH CONTRACTUAL ADVANTAGE AND ATTORNEYS FEES; JURY TRIAL DEMANDED |

Counterclaim

Counterclaimant, DYNAMIC LEISURE CORPORATION ("DLC"), alleges this Counterclaim as follows:

### PARTIES

1. Counterclaimant DLC is a corporation organized under the laws of the State of Minnesota and with a principal place of business in Tampa, Florida.

2. Counterclaim Defendant MMA Capital, LLC ("MMA") is, and at all times relevant hereto was, a limited liability company formed under the laws of the State of Delaware, with a principal place of business in Santa Rosa, California.

### JURISDICTION

3. This Court has jurisdiction over this action under 28 U.S.C. § 1332 in that this is a civil action between citizens of different states and there is more than $75,000 in controversy.

### VENUE

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to MMA's claims occurred in this district.

### FACTUAL BACKGROUND

5. On or about January 11, 2006, MMA and DLC executed a Secured Convertible Promissory Note ("Note") whereby MMA agreed to lend DLC the sum of $2 million and DLC agreed to repay the Note with interest on the outstanding principal at the rate of 8% per annum. A copy of the Note is attached as Exhibit A to the Complaint in this action.

6. On or about January 11, 2006, MMA and DLC also entered into a security agreement ("Security Agreement") whereby DLC secured the Note by giving MMA a security interest in substantially all of DLC's assets ("Collateral"). A copy of this Security Agreement is attached as Exhibit B to the Complaint in this action.

7. The Note was modified in writing by a Confidential Settlement Agreement ("Settlement Agreement") dated as of March 5, 2007 between MMA and DLC. Included in that Settlement

Agreement, in Section 6, was an agreement by MMA that it would allow and in fact encourage DLC to obtain additional or alternate financing and that if DLC obtained additional or alternate financing from any lender, which financing exceed Three Million Dollars, MMA would subordinate its security position in the collateral to the security position of the other lender.

8. Also included in the Note, Security Agreement and Settlement Agreement was an agreement and implied covenant of good faith and fair dealing whereby MMA agreed and promised not to do anything or take any action which interfered with or prevented DLC from enjoying the full benefit of the terms of those agreements, including, but not limited to, MMA's covenant not to interfere with DLC's ability to obtain additional or alternate financing from other lenders or investors so that DLC could pay off the Note and/or operate DLC's business.

## FIRST CLAIM
(Breach of Contract)

9. MMA breached the Note, the Security Agreement and the Settlement Agreement in December 2007 and January 2008 by attempting to prevent or interfere with DLC's efforts to obtain additional financing with Trafalgar Capital Specialized Investment Fund ("Trafalgar"). MMA did so by, among other things, falsely notifying Trafalgar that if DLC obtained additional financing from Trafalgar, even if the total financing exceeded Three Million Dollars, that MMA would not subordinate its security interest in the collateral to the security interest of Trafalgar in the collateral.

10. MMA's actions in attempting to prevent DLC from obtaining additional financing from Trafalgar or other lenders or investors was a breach of its agreement to allow DLC to aobtain additional financing as set forth in the Settlement Agreement.

11. As a direct and proximate result of MMA's breach, DLC has been unable to obtain all the additional financing it could have obtained and was to obtain from Trafalgar or other lenders or investors and as a result has suffered lost business income and business opportunities by not having enough operating capital to service or perform on all of its customer agreements and business opportunities. MMA's breach also harmed DLC's financial position and puts DLC

in a position where it has not and may not be able to continue to grow or operate profitably, all to DLC's harm in excess of $2.5 million.

## SECOND CLAIM
(Bad Faith Breach of Contract)

12. DLC realleges and incorporates Paragraphs 1 through 11 above as though fully set forth herein.

13. MMA's actions in attempting to and preventing DLC from obtaining all the additional financing and investment from Trafalgar and other investors or lenders was a breach of MMA's covenant of good faith and fair dealing under the Settlement Agreement.

14. As a direct and proximate result of MMA's breach, DLC has been damaged in an amount in excess of $2.5 million.

## THIRD CLAIM
(Interference With Contractual Advantage)

15. DLC realleges and incorporates Paragraphs 1 through 14 above as though fully set forth herein.

16. DLC has a contract with Trafalgar to obtain additional financing and/or investment in DLC. That contract is based on Trafalgar being able to secure its additional investment in or loan to DLC by a first secured position (prior to MMA's security interest) in DLC's business assets (the "Collateral").

17. MMA has interfered with DLC's contract with Trafalgar by refusing to agree to subordinate its security interest in the collateral to the security interest of Trafalgar despite Trafalgar already lending or investing more than three million dollars to DLC.

18. As a direct and proximate result of MMA's interference, DLC has been damaged in excess of $2.5 million by not being able to obtain the full amount of the investment Trafalgar and other lenders or investors would have invested or loaned to DLC but for MMA's interference.

19. MMA's interference was willful and malicious and was done with the intent to prevent DLC from obtaining financing or capital with which to grow its business and to be able to pay the Note. MMA's interference was done with the intent that it would prevent DLC from paying back the Note and that MMA could then (as a result of its own interference) foreclose on the security and acquire the assets of DLC, including its proprietary software with a value of tens of millions of dollars, for a fraction of its true value and thereby effectively "steal" DLC's assets. MMA's interference was willful, wanton and despicable, entitling DLC to punitive damages in excess of $2.5 million.

### FOURTH CLAIM
(Interference With Prospective Economic Advantage)

20. DLC realleges and incorporates Paragraphs 1 through 19 above as though fully set forth herein.

21. MMA's interference by, among other things, refusing to subordinate its security interest in the collateral, attempting to dissuade Trafalgar from providing additional financing or investment and filing a bad faith temporary restraining order interfered with DLC's prospective economic advantage by preventing DLC from obtaining all or more financing and/or investment from Trafalgar and other investors or lenders.

22. As a direct and proximate result of MMA's interference, DLC has been damaged in an amount in excess of $2.5 million.

23. MMA's actions were wanton, willful and despicable, entitling DLC to punitive damages in excess of $2.5 million.

### FIFTH CLAIM
(Attorneys Fees)

24. DLC realleges and incorporates Paragraphs 1 through 23 above as though fully set forth herein.

Counterclaim                                                                 - 4 -

25. The Settlement Agreement provides that in the event of a breach, the prevailing party is entitled to reasonable attorneys fees.

26. MMA has breached the Settlement Agreement by refusing to subordinate its security and breaching the Settlement Agreement thereby, entitling DLC to its attorneys fees and costs.

27. As a direct and proximate result of such breach, DLC has been damaged in incurring attorneys fees and costs in this action and in prosecuting these Counterclaims.

WHEREFORE DLC prays as follows:

1. For damages as to each claim in excess of $2.5 million.
2. As to the Third and Fourth Claims for punitive damages in excess of $2.5 million.
3. For its reasonable attorneys fees and costs according to proof.
4. For other such relief as is deemed appropriate.

RESPECTFULLY SUBMITTED

DATED: February 13, 2008    LAW OFFICES OF SAMUEL KORNHAUSER,

By: _____
Samuel Kornhauser
Attorney for Counterclaimant

## DEMAND FOR JURY

DLC hereby demands trial by jury on all claims asserted in this action.

RESPECTFULLY SUBMITTED

DATED: February 13, 2008    LAW OFFICES OF SAMUEL KORNHAUSER,

By: _____
Samuel Kornhauser
Attorney for Counterclaimant

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

Counterclaim    - 5 -

## PROOF OF SERVICE

I declare that I am employed in the City and County of San Francisco. I am over the age of eighteen years and not a party to the within cause. My business address is 155 Jackson Street, Suite 1807, San Francisco, CA. On February 13, 2008, I served the within **COUNTERCLAIM FOR DAMAGES FOR BREACH OF CONTRACT, BAD FAITH, INTERFERENCE WITH CONTRACT, INTERFERENCE WITH CONTRACTUAL ADVANTAGE AND ATTORNEYS FEES; JURY TRIAL DEMANDED** on the party below in said cause:

Michael R. Matthias, Esq.
John J. Leonard, Esq.
Baker & Hostetler LLP
12100 Wilshire Boulevard, 15th Floor
Los Angeles, CA 90025-7120

via e-mail and United States Mail.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on February 13, 2008, at San Francisco, CA.



Samuel Rolnick

LAW OFFICES
SAMUEL KORNHAUSER
155 Jackson Street, Suite 1807
San Francisco, CA 94111

Counterclaim